Dale M. Cendali (admitted *pro hac vice*)
dale.cendali@kirkland.com
Joshua L. Simmons (admitted *pro hac vice*)
joshua.simmons@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel. (212) 446-4800
Fax (212) 446-4900

Miranda D. Means (admitted *pro hac vice*)
miranda.means@kirkland.com
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 385-7500
Facsimile: (617) 385-7501

Yungmoon Chang (SBN 311673)
yungmoon.chang@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

*Attorneys for Plaintiff Riot Games, Inc.*
*Additional Counsel on Signature Page*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIOT GAMES, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHANGHAI MOONTON TECHNOLOGY CO., LTD., <br><br> Defendant. | CASE NO. 2:22-cv-3107 MWF-JPRx <br><br> **PLAINTIFF RIOT GAMES, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO CONDUCT VENUE DISCOVERY** <br><br> Complaint Filed Date: May 9, 2022 <br><br> Judge: Hon. Michael W. Fitzgerald <br> Hearing date: October 31, 2022 <br> Time: 10:00 a.m. |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. LEGAL STANDARD.......................................................................................... 2

III. ARGUMENT ...................................................................................................... 4

    A.    The Discovery Sought Is Relevant and Material to the FNC Motion..... 4

    B.    The Discovery Sought Is Not Limited to Personal Jurisdiction. ............ 7

    C.    Moonton Has Not Provided the Information Riot Is Seeking................. 8

    D.    Riot's Requests Are Narrowly Tailored................................................ 11

IV. CONCLUSION................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Alcoa S.S. Co. v. M/V Nordic Regent*,
   654 F.2d 147 (2d Cir. 1980) ........................................................................... 3

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ....................................................................... 9

*In re Bridgestone/Firestone, Inc. ATX, ATX II & Wilderness Tires Prods. Liab. Litig.*,
   131 F. Supp. 2d 1027 (S.D. Ind. 2001) ...................................................... 3, 5

*Cheng v. Boeing Co.*,
   708 F.2d 1406 (9th Cir. 1983) ....................................................................... 3

*de Borja v. Razon*,
   835 F. App'x 184 (9th Cir. 2020) ............................................................. 7, 8

*de Borja v. Razon*,
   No. 18 Civ. 1131, 2019 WL 4724317 (D. Or. Aug. 16, 2019) ..................... 7

*Ebeling Grp., Inc. v. Studio Lambert Ltd.*,
   No. 18 Civ. 10123, 2019 WL 8198215 (C.D. Cal. June 5, 2019) ................ 9

*Fitzgerald v. Texaco, Inc.*,
   521 F.2d 448 (2d Cir. 1975) ........................................................................... 3

*Gates Learjet Corp. v. Jensen*,
   43 F.2d 1325 (9th Cir. 1984) ......................................................................... 6

*Johnson v. PPI Tech. Servs., L.P.*,
   No. 11 Civ. 2773, 2012 WL 5423784 (E.D. La. Nov. 6, 2012) .................... 3

*Kamel v. Hill-Rom Co., Inc.*,
   108 F.3d 799 (7th Cir. 1997) ..................................................................... 5, 6

*Keywords, LLC v. Internet Shopping Enters., Inc.*,
   No. 5 Civ. 2488, 2005 WL 8156437 (C.D. Cal. June 29, 2005) ................ 10

*Laub v. U.S. Dep't of Interior*,
   342 F.3d 1080 (9th Cir. 2003) ....................................................................... 3

*Life Bliss Found. v. Sun TV Network Ltd.*,
 No. 13 Civ. 393, 2013 WL 12132068 (C.D. Cal. Dec. 13, 2013) ...................2, 5

*Marshall v. McCown Deleeuw & Co.*,
 391 F. Supp. 2d 880 (D. Idaho 2005) ................................................................9

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
 198 F.R.D. 670 (S.D. Cal. Jan. 11, 2001) .......................................................3, 9

*Panterra Networks, Inc. v. Convergence Works, LLC*,
 No. 9 Civ. 1759, 2009 WL 4049956 (N.D. Cal. Nov. 20, 2009) .......................10

*Piper Aircraft Co. v. Reyno*,
 454 U.S. 235 (1981) ...........................................................................................2

*Ravelo Monegro v. Rosa*,
 211 F.3d 509 (9th Cir. 2000) .............................................................................6

*Ridgway v. Phillips*,
 383 F. Supp. 3d 938 (N.D. Cal. 2019) ............................................................4, 6

*RSE-CA, LLC v. Proficio Mortg. Ventures, LLC*,
 No. 14 Civ. 1698, 2014 WL 12560872 (C.D. Cal. Nov. 19, 2014) ...................10

*Seagal v. Vorderwuhlbecke*,
 162 F. App'x 746 (9th Cir. 2006) .......................................................................6

*Seagal v. Vorderwuhlbecke*,
 No. 03 Civ. 07330, Dkt. 15 (C.D. Cal. Feb. 12, 2004) .......................................6

*Star Fabrics, Inc. v. Zappos Retail, Inc.*,
 No. 13 Civ. 229, 2013 WL 12124096 (C.D. Cal. July 19, 2013) .......................7

*Stross v. NetEase, Inc.*,
 No. 20 Civ. 861, 2020 WL 5802419 (C.D. Cal. Aug. 20, 2020) ........................4

*Villar v. Crowley Maritime Corp.*,
 780 F. Supp. 1467 (S.D. Tex. 1992) ..................................................................8

*Weiner v. Shearson, Hammill & Co., Inc.*,
 521 F.2d 817 (9th Cir. 1975) .............................................................................4

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
 507 F. Supp. 1128 (D. Nev. 1980) .....................................................................8

## I. INTRODUCTION

Moonton's Opposition to Riot's Motion for Leave to Conduct Venue Discovery (the "Opposition") only serves to underscore why Riot's Complaint should not be dismissed without the specific, targeted discovery requested by Riot, so that the Court may determine the full scope of Moonton's United States presence and its questionable claim that it cannot conveniently litigate here.[1] Moonton styles itself as a Chinese company with scant connection to this District. But Riot already has identified documents that contradict that assertion. Specifically, public sources show that Moonton has made significant revenues from distributing *MLBB* in the United States, has contracts and co-branding campaigns with United States entities, and operates in this District. Moreover, Moonton removed evidence from the Internet related to its Moonton U.S. division, and its Opposition further obfuscates, rather than clarifies, its connection to this District. Rather than take Moonton's word for it and rely solely on its self-serving declarations, the targeted discovery Riot seeks will help ensure that Moonton's FNC Motion is decided on a full and accurate record.

As Riot noted in its Motion, the present lawsuit reflects a significant change in circumstance since the parties' 2017 litigation. Moonton asserts that because "Riot never requested discovery" during the parties' 2017 litigation, none is necessary here. Opp. 1–2. This tellingly ignores the fact that the 2017 litigation and this litigation are ***not*** one and the same—this litigation involves different infringement that does not implicate the same concerns vis-à-vis Tencent that previously centered in the Court's dismissal decision. *See* Dkt. 60. And Moonton's operations have changed in the five years since the parties' previous dispute, making the public and private interest factors even more strongly support Riot's choice of its home forum. The limited discovery Riot is seeking will further clarify that. Moonton also asserts that the discovery sought by Riot is "irrelevant to the FNC motion," Opp. 15, but Riot's requests relate directly to public and

---

[1] Capitalized terms not defined here were previously defined in Riot opening brief. Dkt. 42 (the "Motion").

1

private interest factors considered in *forum non conveniens* (including the convenience of the forum to the parties) and are also specifically targeted to (1) facts that Moonton itself raised and (2) information that is not fully available from the public record or Moonton's representations to the Court.

Accordingly, Riot respectfully requests that, if the Court does not intend to deny Moonton's FNC Motion based on the existing record, it grant Riot's Motion and permit it to conduct the requested discovery.

## II.    LEGAL STANDARD

Moonton's narrow recitation of the legal standard for *forum non conveniens* discovery is both misleading and contrary to the principle of affording courts "substantial discretion and flexibility" to direct discovery, *see Life Bliss Found. v. Sun TV Network Ltd.*, No. 13 Civ. 393, 2013 WL 12132068, at *5 (C.D. Cal. Dec. 13, 2013). Moonton cites *Piper Aircraft Co. v. Reyno* for the proposition that discovery in the context of *forum non conveniens* is "highly disfavored." Opp. 3 (citing 454 U.S. 235, 258–59 (1981)). *Reyno*, however, far from stating that such discovery is disfavored, specifically requires that the court must have "enough information… to balance the parties' interests" in the context of *forum non conveniens*. *Id.* at 258. The Supreme Court in *Reyno* dismissed the case in light of several unique issues that are not present here, including impleading potential third-party defendants, multiple defendants in various countries, the required application of foreign law, and other issues that "would be confusing to the jury." 454 U.S. at 260. Moreover, unlike here (as described further below), the defendants in *Reyno* provided "sufficient information" to balance the parties' interests despite the complex issues involved. *Id.* at 258–59.[2] By contrast, certain factual claims Moonton has put forward are controverted, making discovery into those claims necessary

---

[2] The Supreme Court in *Reyno* also noted Scotland's "very strong interest" in the litigation because the harm occurred there and nearly every plaintiff and defendant was either Scottish or English. *Id.* at 268. Here, Riot suffered the harm of Moonton's infringement in the United States, Riot is an American company, and Moonton seems to maintain a significant business presence in the United States through its apparent subsidiary or partner "Moonton U.S." and hiring of employees in the U.S.

to determine "what is really 'known' about" the pertinent facts and so that the Court may properly weigh the public and private interest factors. *See In re Bridgestone/Firestone, Inc. ATX, ATX II & Wilderness Tires Prods. Liab. Litig.*, 131 F. Supp. 2d 1027, 1029–31 (S.D. Ind. 2001).

This Court need not decide *forum non-conveniens* based on Moonton's affidavits alone. The cases that Moonton cites to support the sufficiency of affidavits all make clear that the affidavits must provide "enough information" to detail the parties' interests and allegations with respect to the forum at issue. *See Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir. 1983); *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 158 (2d Cir. 1980). Moonton's affidavits, however, fail to answer key questions about its U.S. presence, including details about its hiring practices, U.S. sales, and U.S. contractual relationships, which Riot should be permitted to investigate. *See infra* Section III.C; *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670 (S.D. Cal. Jan. 11, 2001) ("Plaintiff should be allowed [to] explore the quality, quantity and nature of all of Defendant's contacts with this forum and draw its own conclusions and proffer its own arguments"). And the law is clear that the Court may consider "all of the evidence before it," including evidence outside of the Complaint, not just affidavits. *Johnson v. PPI Tech. Servs., L.P.*, No. 11 Civ. 2773, 2012 WL 5423784, at *2 (E.D. La. Nov. 6, 2012) (citing *Alcoa S.S. Co.*, 654 F.2d at 158).[3]

In short, none of Moonton's cited cases or their progeny foreclose additional

---

[3] Moonton further asserts that in the context of an FNC Motion, the only type of discovery permitted is that related to the "location of important sources of proof." Opp. 4. In support, Moonton cites to a footnote from the Second Circuit case *Fitzgerald v. Texaco, Inc.*, which does not further explain what this means, nor is this phrase used in the context of a motion for discovery. 521 F.2d 448, 451 n. 3 (2d Cir. 1975). Moonton does not explain why the discovery Riot is seeking would not fall into this category, or how this relates to the private and public factors. Indeed, *Bridgestone*, the other case Moonton cites for this standard, interprets this phrase relatively broadly, explaining that it would include "access to sources of proof and the cost of obtaining the attendance of willing witnesses." 131 F. Supp. 2d 1027, 1029–31 (S.D. Ind. 2001). In *Life Bliss*, the court permitted discovery where it was relevant to a number of different facts, including the adequacy of the foreign forum, choice of law issues, and the interests of the parties. *Life Bliss*, 2013 WL 12132068, at *7.

discovery where the court requires "additional information to rule on the motion," *Life Bliss*, 2013 WL 12132068, at *5, and as detailed below, to the extent the Court is inclined to grant Moonton's motion, discovery here is required to provide the Court with additional information regarding the private and public interest factors that is missing from Moonton's affidavits and/or controverted by the public record. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (permitting discovery where facts were controverted or a more satisfactory showing was necessary).

### III. ARGUMENT

#### A. The Discovery Sought Is Relevant and Material to the FNC Motion.

Riot seeks targeted discovery concerning (1) facts related to the convenience of the forum to the Moonton, including Moonton's business dealings in the forum, contracts with United States-based entities, and the operation of the Moonton US division; (2) facts related to the location of relevant Moonton witnesses; and (3) facts related to the location of relevant Moonton records. Mot. 9. These requests seek to clarify Moonton's presence in the forum, potential evidence that exists in this forum, and California's interest in retaining this dispute, all of which are relevant private and public interest factors to be considered in the context of *forum non conveniens*. *See Stross v. NetEase, Inc.*, No. 20 Civ. 861, 2020 WL 5802419, at *12 (C.D. Cal. Aug. 20, 2020); *Ridgway v. Phillips*, 383 F. Supp. 3d 938, 949 (N.D. Cal. 2019) (considering a defendant's contacts and business with California in determining the convenience of the forum). Ignoring the private and public interest factors, Moonton argues that the discovery sought is immaterial because the "central thrust" of its FNC Motion is Tencent's litigation in China. Mot. 4. Putting aside the fact that Tencent's unrelated litigation in China is irrelevant here, as detailed in Riot's opposition to the FNC Motion, Dkt. 60 at 10, 20, the Ninth Circuit made clear that the doctrine of *forum non-conveniens* "do[es] not turn on the existence of any pending parallel litigation." *Weiner v. Shearson, Hammill & Co., Inc.*, 521 F.2d 817, 820 (9th Cir. 1975). As a result, this Court will still need to consider the private and public interest factors. Far from a "fishing expedition," Opp. 6, the discovery Riot seeks relates

4

to specific factual contentions made **by Moonton** on the private and public interest factors—including its contentions about the location of its operations, employees, and revenues—that are either incomplete or contradicted by public sources. See Mot. 7.

Thus, this is precisely a scenario where directing discovery is appropriate. *See Bridgestone*, 131 F. Supp. 2d at 1029–31 (directing discovery where there was evidence refuting defendant's factual claims). Moonton cannot distinguish this case from others directing discovery on *forum non-conveniens*. Moonton attempts to differentiate *Bridgestone* by arguing that the record before this Court is "sufficient" because this Court purportedly had "sufficient evidence" to decide the parties' 2017 dispute. Opp. 7. The 2017 dispute centered on circumstances vis-à-vis Tencent that are not present here, and Moonton's **current** presence in the forum has fundamentally changed in the past five years. Moonton's infringement has become even more expansive and its U.S. presence has grown along with its infringement, including significant U.S. sales and the apparent establishment of U.S. business and employment practices. Mot 2–4. Moonton cites no case law foreclosing Riot from seeking limited discovery under these new circumstances merely because it did not do so five years ago.[4] Moonton similarly tries to distinguish *Life Bliss Found. v. Sun TV Network Ltd.*, by focusing on the fact that *Life Bliss* involved personal jurisdiction issues. 2013 WL 12132068, at *3. But the court in *Life Bliss* specifically addressed "Discovery Regarding Forum Non Conveniens" **separately** from jurisdictional discovery. *Id.* at *7. In particular, "[a]ccording Plaintiffs the presumption of convenience of their chosen forum," the court found it appropriate to permit discovery into the defendant's publication and broadcasting activities, in part to allow the court to

---

[4] Moonton also seems to argue that the *forum non conveniens* factors that *Bridgestone* lists as *examples* into which a party may seek discovery are a comprehensive list of factors subject to potential discovery. *Bridgestone*, however, specifically noted that "access to sources of proof and the cost of obtaining the attendance of willing witnesses" are merely examples from a long list of factors taken from a Seventh Circuit case. 131 F. Supp. 2d 1027, 1029–31 (noting that "the district court must 'contemplate[ ] all relevant public and private interest factors' and balance these factors in a 'reasonable' manner") (quoting *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997)).

1   better balance the parties' interests. *Id.* at *7. The same is true here.

2   Moonton tries to avoid discovery by narrowing what facts are pertinent to the private and public interest factors, an effort that similarly falls flat. Tellingly ignoring the bulk of Riot's proposed requests, Moonton argues that some requests relate to Moonton's business operations in and contacts with the United States in "general," and that such operations and contacts are not relevant to the forum's convenience to the litigants.[5] Opp. 1, 5–6. Moonton specifically criticizes Riot's reliance on *Ridgway v. Phillips*, arguing that the "crux" of the *forum non conveniens* motion there was the defendant's inconvenience in travelling to California to the U.K, and that *Ridgway* is "not salient in the corporate context," because the proper inquiry is "how many" of Moonton's witnesses would have to travel to testify. Opp. 6 (citing 383 F. Supp. 3d at 948). Moonton cites no case law supporting its contention that the convenience factor is confined to an analysis of the "number" of witnesses who would have to travel to testify—indeed, the Ninth Circuit has made clear that the *forum non-conveniens* analysis is **not** a mere numbers game.[6] *See Gates Learjet Corp. v. Jensen*, 43 F.2d 1325 (9th Cir. 1984) (finding the district court "improperly focused on the number of witnesses in each location"); *see also Kamel*, 108 F.3d at 802 (noting additional factors including the relative convenience of the parties and other "administrative and legal entanglements").

---

[5]   Moonton thus ignores Riot's proposed requests about sales of *MLBB*, the design and marketing of *MLBB* in the United States, and Moonton's contracts with United States entities, including those Riot knows have some involvement with the sale of the game at issue, such as Google, Akamai, and Apple. Dkt. 43-2.

[6]   Moonton cites *Seagal v. Vorderwuhlbecke* for the proposition that discovery into Moonton's contacts would not be material because in that case the inconvenience of travelling for certain party witness would be equal. Opp. 7 (citing *Seagal v. Vorderwuhlbecke*, 162 F. App'x 746, 748 (9th Cir. 2006)). The underlying decision in that case shows, however, that the court's *sua sponte* dismissal for *forum non conveniens* was because the property in that dispute was located in Germany, the breaches of contract occurred in Germany, the relevant lease was negotiated in Germany, and the defendant was subject to personal jurisdiction in Germany. *Seagal v. Vorderwuhlbecke*, No. 03 Civ. 07330, Dkt. 15 at 6 (C.D. Cal. Feb. 12, 2004). Thus, the record in that case already made clear that Germany was the proper forum for the dispute and additional discovery would not assist the court further. That is not the case here, where the infringement took place in the United States and the United States is Riot's home forum.

1  This is consistent with the court's approach in *Ridgway*, which went beyond numbers and
2  considered the fact that the defendant in that case "reap[ed] the benefits of engaging in at
3  least some business in California over a period of years, only to plead inconvenience
4  when sued in a California court." *Id.* at 949.[7]

5       Moonton relies on *de Borja v. Razon* for its contention that its business operations
6  in this forum are irrelevant. Opp. 4–5 (citing 835 F. App'x 184, 187 (9th Cir. 2020)). If
7  anything, that case shows the opposite.[8] The underlying decision that was upheld by the
8  Ninth Circuit in *de Borja* notes that "[the parties have] provided 'enough information to
9  enable [] [this court] to balance the parties' interests," which included facts about each
10 party's residence or business activities in the U.S., the connections of the parties to the
11 plaintiff's "home forum," and whether any "wrongful acts" occurred within the United
12 States. *de Borja v. Razon*, No. 18 Civ. 1131, 2019 WL 4724317, at *5–8 (D. Or. Aug.
13 16, 2019) (alterations and internal quotation marks omitted). The underlying decision in
14 *de Borja* goes so far as to state that the defendant "has no connections with Oregon" and
15 both the plaintiff and primary defendant in that case "reside[d] in the Philippines," both
16 of which were expressly weighed in the court's consideration of the private interest
17 factors. *Id.* at *8. The only remote connection to the U.S. that the *de Borja* court noted
18 was the residence of an alleged corporate alter ego of the primary defendant. *Id.* at *7–8.
19 Moonton's significant connections with this forum, including its business operations in
20 this District, are thus relevant and material to *forum non-conveniens*.

21        **B.**    **The Discovery Sought Is Not Limited to Personal Jurisdiction.**
22      Moonton mischaracterizes the cases cited in Riot's Motion as relating solely to

---

[7] Moonton also states that *Ridgway* is the only case cited by Riot for the contention that Moonton's U.S. presence is relevant to the *forum non conveniens* analysis, Opp. 6, but Moonton ignores Riot's citation to the Ninth Circuit's holding in *Ravelo Monegro v. Rosa*, which considered whether the forum had a "substantial relation" to the action and considered a contract related to the United States. 211 F.3d 509, 514 (9th Cir. 2000)

[8] Indeed, the Ninth Circuit specifically noted that "the case lacked ties to the [U.S.] forum," and did not broadly state that business operations and contacts with the forum were irrelevant.

jurisdictional discovery, which it alleges "isn't relevant to an FNC motion" and is afforded a different standard.[9] Opp. 4–5. Courts, however, have found that the standards of jurisdiction and *forum non conveniens* are interrelated and evidence as to one is relevant to the other, particularly as to the parties' activities in the forums at issue. *Villar v. Crowley Maritime Corp.*, 780 F. Supp. 1467 (S.D. Tex. 1992) ("[w]hile the two issues are not absolutely identical, the *forum non conveniens* determination necessarily involves an inquiry as to the parties' activities in various forums," which is relevant to personal jurisdiction); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 507 F. Supp. 1128, 1137–38 (D. Nev. 1980) (holding that the requirement of reasonableness for the exercise of personal jurisdiction may be judged by standards analogous to those used to decide *forum non conveniens* motions). Notably, *de Borja*, the only case that Moonton cites for the proposition that jurisdictional facts are not relevant to the *forum non conveniens* analysis, simply found that the "requested" jurisdictional discovery would not necessarily have aided the court in its analysis, not that such discovery can never be useful or relevant. 835 F. App'x at 186. Moonton's attempts to spin Riot's motion into a request for discovery into purely jurisdictional facts relevant only to personal jurisdiction thus ignores the pertinence of such facts to the *forum non-conveniens* analysis, as detailed above.

C. **Moonton Has Not Provided the Information Riot Is Seeking.**

As Riot's Motion explained, the discovery Riot seeks is not otherwise available as a result of Moonton's contradictory and gap-filled testimony. Mot. 7–8. Moonton misleadingly claims that it has "already provided" the evidence requested by Riot and that the clear deficiencies identified in Riot's Motion are mere "hand-waiving." Opp. 8,

---

[9] Moonton also suggests that it has made "specific denials" of Riot's assertions as to its U.S. presence that obviate Riot's requests and states that the requests thus fail to meet even the "liberal standard" for jurisdictional discovery. Opp. 6 (citing *Star Fabrics, Inc. v. Zappos Retail, Inc.*, No. 13 Civ. 229, 2013 WL 12124096, at *7–8 (C.D. Cal. July 19, 2013)). But in *Star Fabrics*, the plaintiff only offered "speculation" that discovery would strengthen its argument. *Id.* at *7. Here, by contrast, Riot has offered specific public sources contradicting Moonton's claims. Mot. 7–8. The limited discovery that Riot is proposing would clarify these specific inconsistencies.

8

RIOT'S REPLY ISO MOTION TO
CONDUCT VENUE DISCOVERY                    CASE NO.: 2:22-CV-03107 MWF-JPR

11. But neither of these contentions stands up to scrutiny and the information sought by Riot is not available by any means beyond the limited discovery sought.

*First*, as detailed in the Means Declaration, Moonton has engaged in a pattern of removing from the Internet evidence that it engaged in hiring or other business within the United States. Dkt. 43 ¶¶ 12–14. In support of its FNC Motion, Moonton previously asserted that "There is not, and has never been, a business entity named 'Moonton Games US.'" Dkt. 28-2, ¶ 8. In its Opposition to Plaintiff's Ex Parte Application, Moonton newly suggested that "Moonton Games US" was an "informal term" used to refer to Moonton's independent contractors in the United States. Dkt. 46 at 5, n. 3. Now, Moonton changes its tune for a *third* time, asserting that the jobs being advertised for Moonton Games US are not "actual employment positions with Moonton," Opp. 13, stating that the jobs were either posted by an unnamed third party, unrelated to *MLBB* and "filled," or inexplicably posted by an ex-employee of Moonton. Dkt. 56-1 ¶¶ 5–9. Tellingly, Moonton does not answer the questions Riot raised, including details on the full scope of employment for contract workers in the U.S., the identities of third parties hiring U.S. workers on behalf of Moonton, the status of Moonton's U.S. contracts, and what these contractors' roles were in relation to *MLBB*.

*Second,* the Court is not obligated to accept Moonton's one-sided assertions about these issues at face value, particularly when the option of targeted discovery is available. *See Ebeling Grp., Inc. v. Studio Lambert Ltd.*, No. 18 Civ. 10123, 2019 WL 8198215, at *4 (C.D. Cal. June 5, 2019) ("Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary") (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)); *Orchid Biosciences*, 198 F.R.D. 670. Discovery is appropriate where public records contradict the one-sided evidence provided by the defendant. *Marshall v. McCown Deleeuw & Co.*, 391 F. Supp. 2d 880 (D. Idaho 2005) (granting motion for leave to conduct discovery where defendant claimed not to have any contacts in the relevant jurisdiction, but public records showed that an entity controlled by the defendant

RIOT'S REPLY ISO MOTION TO
CONDUCT VENUE DISCOVERY                CASE NO.: 2:22-CV-03107 MWF-JPR

may have had extensive contacts in the jurisdiction).  Here, the publicly available evidence (such as U.S. revenue figures or LinkedIn posts) contradicts the factual record presented by Moonton, and Riot should therefore have the opportunity to explore these issues with the help of the defendant's own documents so that independent conclusions may be drawn.[10]

*Finally*, Riot has and continues to point out specific and concerning inaccuracies and relevant omissions in Moonton's representations thus far.  Moonton fails to respond to all of the deficiencies clearly identified in Riot's Motion that it made clear were issues necessary for the *forum non conveniens* analysis, including what Moonton's U.S. employees and contractors worked on, and Moonton's contractual relationships with U.S. entities in connection with *MLBB*.  Mot. 7–8.  Moonton has stated and reiterated in its Opposition, for instance, that it does not "have any … employees … in the United States." Opp. 10.  But this response is plainly not sufficient when this does not answer whether Moonton has ever previously had U.S. employees or whether a Moonton affiliate ever hired or had U.S. employees.  Moonton also touts its response listing some contractors that it has worked with in the U.S., noting that none "worked [] on *MLBB*," but this statement does not explicitly indicate that the list is exhaustive nor does it deny whether these contractors worked on matters that might involve *MLBB*, such as sales or marketing.  *Id*.  Where a defendant's representations on the record are deficient and potentially inaccurate, and defendant refuses to provide further information on request, leave to conduct discovery is appropriate.  *RSE-CA, LLC v. Proficio Mortg. Ventures, LLC*, No. 14 Civ. 1698, 2014 WL 12560872, at *1 (C.D. Cal. Nov. 19, 2014) (granting jurisdictional discovery where the defendant "could not ascertain" information regarding the citizenship of the plaintiff and plaintiffs' counsel refused to provide it).  Far from a "fishing expedition," Opp. 6, Riot is seeking to fill specific and targeted gaps in the

---

[10]   Riot does not point out these inconsistencies because it "does not like the facts that Moonton has provided," Opp. 11, but because Moonton has *not* actually provided all of the facts necessary to weigh its interests for the purposes of *forum non conveniens* and the facts provided thus-far need not be taken at face value without critique.

information provided by Moonton to-date and this information is not otherwise available from the public record or Moonton's filings in this litigation.[11]

### D. Riot's Requests Are Narrowly Tailored.

Riot's discovery requests in Exhibits 1–3 are narrowly tailored to issues that are relevant and material to the *forum non conveniens* analysis because they request additional documents and information about Moonton's convenience in litigating in this forum, the availability of evidence in the United States, and the location of any U.S. witnesses. Although Moonton claims that these requests are "irrelevant" and "vastly overbroad," Opp. 15, it cites to no case holding that is the case. Nor could Moonton, as it knows that these requests are specific to the factual assertions in the FNC Motion and do not require the extensive responses that it contemplates in its Opposition. *Id.* For example, although Moonton mischaracterizes Riot's requests as demanding "all correspondence regarding *MLBB* downloads in the U.S." to make it appear more burdensome, *id.*, Riot requests only documents that concern the "number of purchases or downloads of *MLBB* in the United States." Means Decl. Ex. 2. It similarly attempts to inflate the burden of Riot's request related to Moonton's U.S. business operations as simply demanding "all documents concerning Moonton's business operations in the United States," Opp. 15, but that request goes on to specify that Riot seeks documents related to the sale, design, and development of *MLBB* in addition to Moonton's strategies to target the United States and U.S. customers. Means Decl. Ex. 2. As to Riot's five narrow interrogatories, Moonton takes issue with only one which requests that Moonton identify all of its employees or contractors located in the United States that are related to

---

[11] Moonton's case law citations regarding the "standards governing jurisdictional discovery," Opp. 14, are inapposite. Unlike in *Panterra Networks, Inc. v. Convergence Works, LLC* where the plaintiff could not "contradict the evidence submitted by defendants," No. 09 Civ. 1759, 2009 WL 4049956, *4 (N.D. Cal. Nov. 20, 2009), Riot pointed to several clear material deficiencies in Moonton's evidence provided in this lawsuit. Similarly, unlike the plaintiff in *Keywords, LLC v. Internet Shopping Enters., Inc.*, Riot has provided multiple specific examples of how "how jurisdictional discovery would allow it to contradict the declarations submitted in support of the motion to dismiss." No. 05 Civ. 2488, 2005 WL 8156437, at *11 (C.D. Cal. June 29, 2005)

11

RIOT'S REPLY ISO MOTION TO
CONDUCT VENUE DISCOVERY                                CASE NO.: 2:22-CV-03107 MWF-JPR

*MLBB*. Opp. 10 (citing Means Decl. Ex. 3). Moonton alleges that the response to this is contained in the Mao Declaration, but fails to consider that the Mao Declaration does not respond to this interrogatory using the more inclusive definition of MOONTON used in Riot's interrogatory. Moreover, Moonton makes no argument about any alleged burden in answering the remaining four interrogatories or Riot's limited deposition request. Means Decl. Exs. 1, 3.

Riot's narrow requests were also not made without consulting Moonton, but instead Riot made its intention to seek this targeted discovery clear to Moonton before it filed its *forum non conveniens* motion and Riot even asked Moonton if it would also seek such limited discovery. Moonton indicated it would not be seeking any additional *forum non conveniens* discovery. Means Decl. ¶ 2. Moonton's current demand that "[a]ny discovery should also be reciprocal," Opp. 15, is also made without any citation to case law and in spite of its prior representations to Riot. Means Decl. ¶ 2. Even in its Opposition, Moonton is unclear about exactly what discovery it would seek if granted leave to do so, instead simply referencing potential discovery requests about "Riot's relationship with its parent company, Tencent." Opp. 16. Although Moonton already told Riot it needed no additional *forum non conveniens* evidence, to the extent it now wishes to seek discovery, it should specifically enumerate those requests.

## IV.  CONCLUSION

For the foregoing reasons, Riot respectfully requests that this Court grant Riot's Motion for Leave to Conduct Venue Discovery.

| | | |
|---|---|---|
| 1 | DATED: October 11, 2022 | */s/ Dale M. Cendali* |

Dale M. Cendali (admitted *pro hac vice*)
dale.cendali@kirkland.com
Joshua L. Simmons (admitted *pro hac vice*)
joshua.simmons@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel. (212) 446-4800
Fax (212) 446-4900

Miranda D. Means (admitted *pro hac vice*)
miranda.means@kirkland.com
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 385-7500
Facsimile: (617) 385-7501

Yungmoon Chang (SBN 311673)
yungmoon.chang@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

Johannes Doerge (admitted *pro hac vice*)
johannes.doerge@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200

*Attorneys for Plaintiff Riot Games, Inc.*

# PROOF OF SERVICE

On October 11, 2022, I caused the electronic filing of the foregoing **REPLY IN SUPPORT OF RIOT GAMES, INC.'S MOTION FOR LEAVE TO CONDUCT VENUE DISCOVERY** with the Clerk of the Court by using CM/ECF system, which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-3.1.1 have been so served.

/s/ Dale M. Cendali
Dale M. Cendali